No. 23-80032

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

LD, DB, BW, RH, and CJ,

*Plaintiffs-Petitioners*,

*v.*

UNITED BEHAVIORAL HEALTH, UNITEDHEALTHCARE INSURANCE
COMPANY, MULTIPLAN, INC.,

*Defendants-Respondents.*

_____

On Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-02254 | Hon. Yvonne Gonzalez Rogers

_____

## RESPONDENTS' ANSWER TO PETITION FOR PERMISSION TO APPEAL

_____

Craig L. Caesar
   *Counsel of Record*
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel.: (504) 566-1311
Craig.Caesar@phelps.com

*Counsel for Respondent*
*MultiPlan, Inc.*

Geoff Sigler
Matthew Rozen
   *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036-5306
Tel.: 202.887.37562
MRozen@gibsondunn.com

*Counsel for Respondents*
*United Behavioral Health and*
*UnitedHealthcare Insurance Company*

*(Additional counsel listed on inside cover)*

Errol J. King, Jr.
Katherine C. Mannino
Taylor J. Crousillac
Brittany H. Alexander
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Tel.: (225) 376-0207
Errol.King@phelps.com

*Additional Counsel for Respondent
MultiPlan, Inc.*

Lauren M. Blas
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
LBlas@gibsondunn.com

Andrew M. Kasabian
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Tel.: 949.451.3800
AKasabian@gibsondunn.com

*Additional Counsel for Respondents
United Behavioral Health and
UnitedHealthcare Insurance Company*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for Defendants-Respondents United Behavioral Health and UnitedHealthcare Insurance Company certifies that United Behavioral Health and UnitedHealthcare Insurance Company are both indirect subsidiaries of UnitedHealth Group, Incorporated, a publicly held corporation.  The undersigned counsel of record for Defendant-Respondent MultiPlan, Inc. certifies that MultiPlan, Inc. is a wholly-owned subsidiary of MultiPlan Holding Corporation, and the ultimate parent company of MultiPlan Holding Corporation is MultiPlan Corporation, a publicly held corporation.

Dated:  April 24, 2023                    GIBSON, DUNN & CRUTCHER LLP

 /s/ Matthew Rozen
Matthew Rozen

*Counsel for Defendants-Respondents*
*United Behavioral Health and*
*UnitedHealthcare Insurance Company*

Dated:  April 24, 2023                    PHELPS DUNBAR LLP

 /s/ Craig L. Caesar
Craig L. Caesar

*Counsel for Defendant-Respondent*
*MultiPlan, Inc.*

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

STATEMENT OF THE CASE................................................................................2

    I.   United and MultiPlan ...............................................................................2

    II.   This Litigation .........................................................................................4

    III. The Order Denying Class Certification...................................................5

ARGUMENT ...........................................................................................................8

    I.   The Certification Order Is Not Manifestly Erroneous .................................9

        A.   The Court Did Not Err in Denying Certification Under Rule
             23(b)(2) ...........................................................................................10

        B.   The Court Did Not Err in Denying Certification Under Rule
             23(b)(3) ...........................................................................................14

    II.   Plaintiffs Identify No Unsettled and Fundamental Class-Action
        Issue.........................................................................................................18

    III. Invocation of a "Death Knell" Is Unpersuasive. ......................................20

CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) (per curiam) ...................................*passim*

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).......................................................................8, 15

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002) ...........................................................20

*Doyle v. Chrysler Grp., LLC*,
663 F. App'x 576 (9th Cir. 2016) .....................................................16

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) ..........................................................11

*Horvath v. Keystone Health Plan E., Inc.*,
333 F.3d 450 (3d Cir. 2003) .............................................................12

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ..........................................................15

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016).....................................................................12, 13

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc) .............................................2

*Nationwide Life Ins. Co. v. Haddock*,
460 F. App'x 26 (2d Cir. 2012) ........................................................14

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ...........................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .......................................1, 9, 14

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015). ..........................................................16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013)................................................................16

*Religious Tech. Ctr. v. Wollersheim*,
    796 F.2d 1076 (9th Cir. 1986) ..........................................................19

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..........................................................................12

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020)......................................................................12

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) ..........................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................10

*Wit v. United Behavioral Health*,
    58 F.4th 1080 (9th Cir. 2023) ............................................1, 7, 13, 17

*Zakaria v. Gerber Prods. Co.*,
    755 F. App'x 623 (9th Cir. 2018) ....................................................16

## RULES

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................18

iv

## INTRODUCTION

Interlocutory review under Federal Rule of Civil Procedure 23(f) is reserved for "rare" cases, not cases presenting "'familiar [or] routine issues.'" *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) (per curiam). The class certification order here was carefully considered and reflects a routine application of settled class-certification principles to the evidence before the district court. That court was "in the best position" to assess the record and decide whether Rule 23's strict requirements were met, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc), and its resolution of those issues was not erroneous, let alone manifestly erroneous.

Plaintiffs' scattershot error arguments are unavailing. Plaintiffs disagree with the district court's ultimate findings and conclusions, but disagreements over the evidence and the court's findings are not the type of supposed "error" that warrants the rare step of interlocutory review. This is particularly true where, as here, the petition raises a litany of wide-ranging issues, all of which supposedly qualify as manifest error, without a meaningful, coherent development of any single one.

Plaintiffs also fail to point to an unsettled question of class action law that warrants review. Instead, they mainly argued that: (1) plaintiffs in one case the district court cited, *Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023), have filed a petition for en banc review; and (2) this Court should reconsider its

precedent. But *Wit* is good law unless and until en banc review is granted (which is speculative at best), and this petition is not a vehicle to collaterally attack that decision. Plaintiffs' disagreement with this Court's precedent also does not demonstrate an unsettled question of law, and this Court cannot somehow disregard or overrule a prior panel decision absent intervening higher authority. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Plaintiffs use their petition to reargue the facts below, suggest that this Court should reconsider well-established legal precedent, and mischaracterize the district court's order. None of these is a valid ground for granting a Rule 23(f) petition, particularly where, as here, the district court could have denied certification on many other alternative grounds that it did not even reach. The petition should be denied.

## STATEMENT OF THE CASE

### I.     United and MultiPlan

Defendants United Behavioral Health and UnitedHealthcare Insurance Company (collectively, "United") are healthcare and insurance companies that act as claims administrators for employers or employer organizations ("plan sponsors") that wish to provide healthcare benefits to employees, including through ERISA plans. Most of these plans are "self-funded," meaning the employer is financially responsible for any benefits paid, and United provides only administrative services, including processing claims, for a fee paid by the plan sponsor. The administrative

services that United will provide to a plan sponsor (including the sponsor's elections about which out-of-network program to use) and the associated fees to United are generally memorialized in an agreement. ECF No. 208 ¶ 9. These agreements vary, often are heavily negotiated, and often are amended from year to year.

United also offers plan sponsors many options for designing benefits programs that meet their specific needs. ECF No. 208 ¶¶ 11-15. One such option is United's Facility Reasonable & Customary (R&C) program, which for many years relied on an outside vendor—Viant, currently a subsidiary of Defendant MultiPlan. Viant maintains a proprietary database that it uses to calculate recommended rates for thousands of out-of-network claims and services. Viant's rates for the services at issue varied by geographic area, over time, and based on modifications made by Viant to its database during the time period at issue.

Plan sponsors also control the plan's design and language, including the terms governing out-of-network reimbursement. Among plans that use United's R&C program, some describe reimbursements as involving the "usual, customary, and reasonable" (UCR) rate, while others refer to reimbursement based on "competitive fees" or grant United discretion to reimburse based on its own fee schedule.

Each plan also specifies a member's deductible and coinsurance for out-of-network services, which vary across plans. ECF No. 206 ¶ 4. Many plans also state that members who seek out-of-network services may be liable for "balance bills,"

which is the difference between a provider's submitted charge and the allowed amount under the plan. ECF No. 208 ¶¶ 23-24; ECF No. 212 ¶ 13. But even for those plans that require members to pay balance bills, many providers often did not balance bill the members, and when they did Defendants often attempted to resolve the balance bills through negotiations with providers, thereby holding members harmless for any difference in cost. *Id.* So even if a member was in theory responsible for a balance bill, whether a member actually paid the difference varied.

## II. This Litigation

In 2020, several members of Apple's and Tesla's health plans sued Defendants for their alleged failure to comply with the terms of Plaintiffs' benefits plans and for conspiring to suppress out-of-network benefits for intensive outpatient program (IOP) treatment, which each plaintiff had sought from the same provider. ECF No. 91 ¶¶ 251-52, 282-83, 324-25, 354-55, 384. Plaintiffs' provider, Summit Estate, brought parallel claims against Defendants, represented by the same counsel, but those claims were dismissed on the pleadings, and Summit Estate did not appeal.

Plaintiffs claim their services were under-reimbursed because United was required to reimburse at a "UCR" rate, but instead reimbursed at a below-UCR rate under Viant's database. Plaintiffs assert that the rates were deficient, and that United should have used a separate data source to calculate claims, though Plaintiffs did not identify any alternative database that they contend Defendants should have used.

The only alternative database Plaintiffs identified, FAIR Health, did not provide any rate for IOP services for most of the putative class period, and none of Plaintiffs' experts tested or endorsed those rates for subsequent periods.

Plaintiffs further claim that United, conspiring with MultiPlan, committed fraud and violated RICO by representing on verification of benefit calls that United would reimburse claims according to UCR, when the rates were in fact below-UCR rates, though the evidence showed that these phone calls varied widely.

After litigation commenced, United stopped administering Tesla's plan, and Apple modified its plan in ways that meant it would no longer use United's R&C program. ECF Nos. 207, ¶ 4(j); 219-11, Ex. 209 at 26:12-20.

Plaintiffs seek equitable relief in the form of a prospective injunction requiring Defendants to apply Plaintiffs' interpretation of UCR and a remand to United to reprocess claims under an appropriate UCR methodology. ECF Nos. 91, 171.

## III. The Order Denying Class Certification

Plaintiffs moved to certify a class of members of ERISA-governed health benefit plans administered or issued by United, seeking reimbursement for out-of-network IOP services to treat substance use disorders. Pointing to sparse evidence and conclusory statements of fact and law, Plaintiffs argued that class certification of the RICO claims was appropriate under Rule 23(b)(1) and (2), and certification of the ERISA claim was appropriate under Rule 23(b)(1), (2), and (3). ECF No. 168.

United and MultiPlan opposed class certification on multiple grounds, including that the controlling plan terms and representations about "UCR" were not uniform, that putative class members' experiences differed wildly in terms of whether they received or paid any balance bill (and thus suffered any compensable harm), and that Plaintiffs and counsel were inadequate and atypical representatives who were recruited by their medical provider as part of the provider's litigation strategy to boost its reimbursements and revenues. ECF No. 205 at 1-2.

The evidence showed that the controlling plan provisions governing these reimbursements—including Plaintiffs' cherry-picked "sample" of plans—varied widely, and very few of them contained any terms tying to Plaintiffs' definition of "UCR." *Id.* at 4-6. Nor was there other evidence of a uniform unlawful practice, common injury, or putative class member experience. *Id.* at 12-17. And members who were not balance billed benefited from lower reimbursement rates—which reduced their deductible and coinsurance payments—so challenging those rates would only benefit their providers while hurting the members themselves. *Id.* As a result, Plaintiffs failed to demonstrate that they met all of the Rule 23(a) requirements or any of the requirements of Rule 23(b).

The opposition further challenged Plaintiffs' attempts to circumvent these individualized issues by framing the ERISA claims as seeking a remand to United to "reprocess" its rate determinations—rather than seeking a payment of the benefits

allegedly due. *Id.* at 31-33. Defendants explained that the request for reprocessing was at odds with Plaintiffs' request that the district court review rate determinations *de novo*, since reprocessing is only available where a claims administrator's determinations are entitled to deference. *Id.* at 18, 32-33. Defendants further explained that seeking reprocessing did not excuse Plaintiffs from putting forth an alternative reimbursement methodology, which Plaintiffs failed to do. *Id.* at 34-35. Defendants also disputed Plaintiffs' arguments that a class seeking reprocessing could be certified as a claim for "final injunctive relief" under Rule 23(b)(2), because reprocessing is not a final or injunctive remedy—it is an intermediate step toward a determination on the merits of entitlement to benefits. *Id.* at 33-34. Nor is it forward-facing, as required by Rule 23(b)(2); it is a step towards retrospective damages. Finally, the named Plaintiffs lack Article III standing for prospective relief, because they failed to identify any risk of future harm. *Id.* at 34.

After the parties had briefed class certification, but before oral argument, this Court issued its decision in *Wit v. United Behavioral Health*, which confirmed Defendants' arguments: Reprocessing is a "means" to the ultimate remedy of monetary relief, and thus reprocessing cannot be used in a class action to circumvent the "numerous individualized questions" involved in a claim for benefits. 58 F.4th 1080, 1094 (9th Cir. 2023). The court held argument, as well as supplemental briefing on how *Wit* impacts Plaintiffs' motion for class certification.

The court denied certification on March 31. ECF No. 301 ("Op."). Addressing predominance, the court found that Plaintiffs' experts conceded "they ha[d] no current damages model," falling short of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Op. 6 (citing ECF No. 219-9, Ex. 184 at 184:21-185:9; Ex. 187 at 245:18-22). Because Plaintiffs failed to meet this most basic requirement, the court did not address the pervasive other individualized issues that predominated.

The district court also rejected certification under Rule 23(b)(1) and (b)(2). Relying on *Wit*, the court explained that Plaintiffs' primary relief under ERISA—reprocessing—is unavailable to them. *Id.* And "[n]o other injunctive relief is available to plaintiffs because they do not and, ostensibly, cannot, allege a threat of imminent harm," given that either United did not administer Plaintiffs' plans or no longer used Viant for their plans' out-of-network claims. *Id.* at 7.

Plaintiffs' RICO claims suffered from similar issues: injunctive relief was unavailable because Plaintiffs alleged no future risk of imminent harm, and the absence of a damages model precluded certification under Rule 23(b)(3). Because Plaintiffs failed to meet any of the requirements of Rule 23(b), the court did not need to consider whether Plaintiffs satisfied the threshold 23(a) requirements.

## ARGUMENT

"Rule 23(f) review" is a "rare occurrence" that is "the exception rather than the rule." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955, 959 (9th Cir. 2005).

When a class certification order "'present[s] familiar and … routine issues,'" review is unwarranted. *Id.* at 959. Review is appropriate only if the order: (1) is "manifestly erroneous and virtually certain to be reversed on appeal from the final judgment"; (2) "presents an unsettled and fundamental issue of law relating to class actions"; or (3) creates a "death-knell" situation, "coupled with a class certification decision … that is questionable." *Id.* at 959, 962. None of these standards is satisfied here.

Instead, Plaintiffs indiscriminately assert a glut of ordinary purported errors that are neither "manifest," nor "fundamental issue[s] of law," *Chamberlan*, 402 F.3d at 959, nor even erroneous. Regardless, 23(f) review would be a waste of judicial resources because class certification fails on many other grounds that the district court did not reach. *See supra* at 6-8. The petition should be denied.

## I. The Certification Order Is Not Manifestly Erroneous

The petition fails at the threshold because Plaintiffs fail to identify *any* error in the challenged order, let alone any "manifes[t]" error sufficient to warrant review. *Chamberlan*, 402 F.3d at 959. That ground typically applies only to "errors … of law." *Id*. Plaintiffs instead focus on fact-bound issues, and in the end prove no error.

Class certification rulings are reviewed for abuse of discretion and factual findings are reviewed for clear error, bearing in mind that the district court is "in the best position" to determine whether Rule 23's requirements have been met. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th

Cir. 2022) (en banc). And Rule 23 is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The party seeking certification "must affirmatively demonstrate his compliance with the Rule." *Id.* As the district court recognized, Plaintiffs failed that burden because their motion was short on evidence and cogent arguments and long on cursory remarks. Plaintiffs' petition follows that same path, rattling off (but failing to develop) a slew of supposed errors that, in reality, are compelled by well-established authority.

### A. The Court Did Not Err in Denying Certification Under Rule 23(b)(2)

To avoid Rule 23(b)(3)'s predominance requirement, Plaintiffs sought class certification under Rules 23(b)(1) and (b)(2). The district court denied both. Op. 7-8. Plaintiffs now focus only on 23(b)(2)—abandoning any argument under 23(b)(1). But the district court's denial of a 23(b)(2) class was well supported.

**1.** Rule 23(b)(2) permits class certification only when "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The district court determined, however, that forward looking injunctive relief is unavailable because Plaintiffs "do not and, ostensibly cannot, allege a threat of imminent harm," for two independently sufficient reasons.

*First*, none of the named Plaintiffs face future harm because their plans no longer use the challenged methodology. The district court found—and Plaintiffs do not dispute—that "[a]ll named plaintiffs were or are employed by Apple or Tesla,"

but "United no longer administers Tesla's plan," and "Apple no longer uses Viant OPR for out-of-network reimbursement claims." Op. 7. Plaintiffs thus *cannot* be injured by United's use of Viant. That quite obviously distinguishes this case from cases where past harm evinced a threat of future injury. Pet. 15-16 (citing *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018)).

Plaintiffs counter that "United intends to continue to utilize … Viant OPR" for *other* plans. Pet. 15. But that has no bearing on the *named Plaintiffs'* standing. Since Plaintiffs are not "themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). That alone defeats 23(b)(2) certification.

*Second*, "no plaintiff alleges that they are in [fact], seeking, or plan to seek IOP treatment in the future." Op. 7. Plaintiffs contest this finding, vaguely referencing the "likelihood of … relapse." Pet. 17. But they conspicuously forget to fill in any citation. Instead, they cite a placeholder for "[m]aybe some cites," or "Government report?" This slipshod effort to raise a factual dispute without evidence does not establish manifest error. And any error would be harmless since the Viant methodology no longer applies to the named Plaintiffs anyway.

While Plaintiffs concede that "imminent harm" is a "requirement," Pet. 15, they also try to circumvent that requirement by suggesting that under *Horvath v.*

11

*Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003), a "violation of the fiduciary duties owed to the Plaintiffs under ERISA" is "sufficient" to establish standing for "injunctive relief." Pet. 11-12. But Plaintiffs fail to mention that *Horvath* was overruled by *Thole v. U.S. Bank N.A.*, which held that a violation of "ERISA's duties" is insufficient to satisfy Article III if "[w]inning or losing [the] suit would not change" the benefits paid. 140 S. Ct. 1615, 1618, 1622 (2020). *Thole* affirmed an Eighth Circuit decision that expressly disagreed with *Horvath*, and *Horvath* was one of the key cases cited on the *losing* side of the circuit split in the cert petition in *Thole*, *see* 2018 WL 3142011, at *V (*passim* citation). In any event, *Horvath* does not change the fact that standing to seek a *prospective* injunction requires a risk of "*future* injury," *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 495 (2009) (emphasis added), which Plaintiffs cannot show.

Nor can Plaintiffs avoid these problems by arguing that their alleged injury is "capable of repetition but evading review." Pet. 16-17. Plaintiffs never invoked this doctrine below when Defendants challenged their standing, ECF No. 205 at 29, and it plainly does not apply. Plaintiffs' injury is not "capable of repetition" in the relevant sense because there is no "'reasonable expectation that the *same complaining party* will be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (cleaned up). Nor would their injury "evad[e] review," which requires that "'the challenged action'" is "'too short'" in

duration "'to be fully litigated prior to cessation or expiration.'" *Id.* (cleaned up). Provider and plan members bring reimbursement disputes all the time, including under ERISA, and once filed there is no rush to decide these cases seeking benefits (i.e., monetary relief) for past claims. Plaintiffs offer no reason to doubt that other proper plaintiffs with standing could file and litigate any claims challenging reimbursements through the usual channels.

**2.** With no prospect for prospective injunctive relief, Plaintiffs also invoked Rule 23(b)(2) based on their claim for "reprocessing." But the district court recognized that this argument was precluded by this Court's decision in *Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023). Op. 7. *Wit* held that reprocessing is not itself a remedy; rather, it "is a *means* to the ultimate remedy," namely, monetary relief and benefits. 58 F.4th at 1094-95. As such, reprocessing cannot be considered "final injunctive relief" under Rule 23(b)(2), so any claim for reprocessing must proceed under 23(b)(3) instead.

Plaintiffs quarrel with *Wit*, mainly based on the mistaken premise that it eliminated the availability of reprocessing. Pet. 9-10. In fact, *Wit* confirmed that although reprocessing is not an end in itself, it is available in appropriate circumstances as an interim step in a claim to recover benefits under ERISA. 58 F.4th at 1094-95. But Plaintiffs' quarrels aside, *Wit* is the law of this Circuit. Following it was not error, much less "manifest" error.

Plaintiffs also try to distinguish the "denied … healthcare claims" at issue in *Wit* from the "approved" but allegedly "underpaid" claims here. Pet. 10. But that distinction has no bearing on the issue here—whether reprocessing is a form of "final injunctive relief" as required by Rule 23(b)(2), or merely a means to monetary relief, which must meet Rule 23(b)(3)'s stricter requirements. (Nor, as explained *infra* at 17, does that distinction help Plaintiffs under Rule 23(b)(3).)

Finally, Plaintiffs argue that *Wit* does not impact their ERISA claims for *other* "equitable remedies"—"surcharge and disgorgement." Pet. 17-18. But Plaintiffs abandoned these theories when they did not pursue or even mention them in their class certification motion or reply. Regardless, surcharge and disgorgement are not "final injunctive relief" either—instead, they "require the type of non-incidental, individualized proceedings for monetary awards that [*Dukes*] rejected under Rule 23(b)(2)." *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012).

## B. The Court Did Not Err in Denying Certification Under Rule 23(b)(3)

The district court also correctly rejected Plaintiffs' proposed class under Rule 23(b)(3)'s stricter requirement that "common" questions "predominate over any questions affecting only individual members." Fed R. Civ. P. 23(b)(3). "A district court is in the best position to determine whether individualized issues … 'will overwhelm common ones and render class certification inappropriate,'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th

Cir. 2022) (en banc), and Plaintiffs offer no reason—manifest or otherwise—to second-guess the district court on this issue.

At the outset, Plaintiffs get the predominance standard wrong. They conflate Rule 23(b)(3) predominance with Rule 23(a)(2) commonality by arguing that under *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023), predominance turns exclusively on "whether a 'common question of law or fact exists.'" Pet. 14. As *Van* makes clear in the very next sentence—which Plaintiffs misleadingly omit—this is just the first step in the predominance analysis. If common questions exist, the heart of the predominance inquiry is "whether individualized questions … 'will overwhelm common ones.'" *Van*, 61 F.4th at 1067.

Under the proper standard, the district court correctly determined that Plaintiffs' claims cannot be certified under Rule 23(b)(3) because they presented no damages model, which is particularly important in a case that turns on whether reimbursement rates were proper. Op. 6, 8; *see* ECF No. 219-9, Ex. 184 at 184:21-185:9; *id.*, Ex. 187 at 245:18-22. As the Supreme Court held in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), a Rule 23(b)(3) plaintiff must "show that 'damages are capable of measurement on a classwide basis.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast*, 569 U.S. at 34). Following *Comcast*, this Court has repeatedly held that although some "[u]ncertainty regarding class members' damages does not prevent certification of a class" in all instances,

23(b)(3) certification is appropriate only where "a valid method has been proposed for calculating those damages." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."). In *Zakaria v. Gerber Products Co.*, 755 F. App'x 623, 624-25 (9th Cir. 2018), for example, this Court held that it was not legal error to decertify a class because there was no model that provided a basis to calculate restitution.

Here, the district court found that Plaintiffs failed this standard because they presented "*no* current damages model" whatsoever. Op. 6 (emphasis added); *see* Op. 8. Plaintiffs do not even contest this—they simply argue that under *Pulaski & Middleman, LLC v. Google, Inc.*, "[d]amages calculations alone" generally "cannot defeat certification," 802 F.3d 979, 988 (9th Cir. 2015). But as this Court has recognized, the crux of *Pulaski* was that Plaintiffs *did* present a damages model in which "'damages could feasibly and efficiently be calculated once the common liability questions are adjudicated.'" *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016). By contrast, where, as here, the plaintiff "has not offered a model" for damages at all, "the predominance requirement is not satisfied." *Id.*

As under 23(b)(2), Plaintiffs sought below to avoid this problem by seeking only reprocessing rather than monetary relief—essentially punting to United on remand the task of devising an alternative reimbursement methodology. ECF No.

168 at 22-23; ECF No. 260-1 at 19-20. But the district court rightly concluded that *Wit* foreclosed this end run around proof of damages. *Wit* holds that where proving an entitlement to benefits would implicate "numerous individualized questions," Plaintiffs cannot avoid those inquiries and justify class certification by seeking a reprocessing rather than benefits. 58 F.4th at 1094. Doing so would violate the Rules Enabling Act by "allow[ing] Plaintiffs to use Rule 23 as a vehicle for enlarging or modifying their substantive rights where ERISA does not provide reprocessing as a standalone remedy." *Id.* at 1095.

For the same reason, seeking reprocessing does not excuse Plaintiffs' inability to prove damages. Indeed, without a model measuring how much United allegedly should have paid on Plaintiffs' claims, Plaintiffs cannot even prove *liability*, since there would be no way to determine whether United underpaid any claim. Plaintiffs' distinction between *Wit*'s denial of benefits and the claimed underpayment of claims here, Pet. 9-10, is thus irrelevant, as the district court recognized. Op. 7. If anything, the lack of a damages model presents a greater hurdle to an underpayment theory than a denial-of-benefits theory because liability on a denial-of-benefits claim does not require an evaluation of whether there was actual underpayment.[1]

---

[1]    Plaintiffs' belated request for "surcharge and disgorgement" fail under Rule 23(b)(3) for the same reason: Even if these theories had not been abandoned, Plaintiffs have not proposed any damages model for calculating either remedy.

17

## II.    Plaintiffs Identify No Unsettled and Fundamental Class-Action Issue

Of Plaintiffs' laundry list of barely elaborated purported errors, they identify only three as purportedly meeting the second ground for 23(f) review: an "unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review." *Chamberlan*, 402 F.3d at 959. But despite referencing that standard, Plaintiffs make no effort to satisfy it. Instead, they merely offer more flawed reasons why the district court supposedly was "incorrect," "contradict[ed]" precedent, or "fail[ed] to recognize" certain purported legal principles. Pet. 8-12. As explained *supra* at 10-17, none of these rulings was error—but regardless, none meets the test for 23(f) review.

*First*, Plaintiffs' meritless challenges to this Court's decision in *Wit*, Pet. 8-10; *supra* at 13-14, are not "unsettled." *Chamberlan*, 402 F.3d at 959. They were settled (and rejected) in *Wit*, which is now the controlling law of this Circuit. Nor will any challenge to *Wit* "evade … review," *id.*, since this Court can now decide whether to review *Wit* en banc. If *Wit* is somehow reversed en banc (it should not be), the district court can decide whether to amend its class certification order at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C). And any other disputes about the availability of reprocessing after *Wit* can be resolved in individual cases. As a result, no aspect of *Wit* provides any basis for 23(f) review here.

18

*Second*, Plaintiffs purport to raise an unsettled question of law regarding this Court's holding in *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986)—purportedly in conflict with other circuits—that "injunctive relief is not available under RICO." Pet. 10-11. But that issue simply is not presented in the challenged order. Plaintiffs' assertion that the district court "relie[d]" on *Wollersheim* in denying certification of Plaintiffs' RICO claim under Rule 23(b)(2), Pet. 10, is plucked from thin air. Neither the district court nor Defendants even cited *Wollersheim*, much less invoked or relied on the principle for which Plaintiffs say it stands. Instead, the district court denied Rule 23(b)(2) certification of Plaintiffs' RICO claims for the "same reasons" as Plaintiffs' ERISA claims—*i.e.*, for lack of "imminent harm," not any RICO-specific issue. Op. 8. Plaintiffs' *wish* for a change in law on an issue not addressed below is not a basis for interlocutory review.

*Third*, Plaintiffs are wrong that *Horvath* (a Third Circuit decision) raises any unsettled issue of law in this Circuit. Pet. 11-12. As discussed above, the Supreme Court settled the issue that the Third Circuit addressed in *Horvath*—whether a breach of fiduciary duty under ERISA establishes an Article III injury—when it overruled *Horvath* in *Thole*. *See supra* at 11-12. Regardless, *Horvath* does not change the fact that the named Plaintiffs lack a *future* injury and cannot seek prospective relief. *See supra* at 12.

19

## III.    Invocation of a "Death Knell" Is Unpersuasive

Plaintiffs' death-knell argument is equally cursory. For a death-knell argument to get off the ground, the order must be "questionable." *Chamberlan*, 402 F.3d at 959. As explained in detail *supra* at 10-17, the order here is not.

Assertions of a death-knell situation must also be more than "conclusory." *Chamberlan*, 402 F.3d at 960. That is true not only for defendants, but also for plaintiffs, who must "demonstrate to the court of appeals why [they] could not pursue [any] individual claim[s]." *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002). A "general assertion" is not enough. *Id*. Plaintiffs—whose sole assertion is that "[t]he potential individual damages from this case are limited in comparison to the time and expenses of pursuing litigation," Pet. 19—have not given any reason to think they would be "virtually compel[led] … to abandon a potentially meritorious claim" because of the district court's ruling. *Chamberlan*, 402 F.3d at 958. They have therefore failed to show that this is a "rare case[] in which interlocutory review is preferable to end-of-the-case review." *Id.* at 959.

## CONCLUSION

After years of litigation, Judge Gonzalez Rogers had a full factual record upon which to make her ruling in this case. This decision broke no new ground with this Court's precedent. The Court should deny the Petition.

Dated:  April 24, 2023

Respectfully submitted,
 /s/ Craig L. Caesar
Craig L. Caesar
    *Counsel of Record*
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel.: (504) 566-1311
Craig.Caesar@phelps.com

Errol J. King, Jr.
Katherine C. Mannino
Taylor J. Crousillac
Brittany H. Alexander
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Tel.: (225) 376-0207
Errol.King@phelps.com

*Counsel for Respondent MultiPlan, Inc.*

Dated:  April 24, 2023

Respectfully submitted,
/s/ Matthew Rozen
Geoff Sigler
Matthew Rozen
    *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036-5306
Tel.: 202.887.37562
MRozen@gibsondunn.com

Lauren M. Blas
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
LBlas@gibsondunn.com

Andrew M. Kasabian
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Tel.: 949.451.3800
AKasabian@gibsondunn.com

*Counsel for Respondents*
*United Behavioral Health and*
*UnitedHealthcare Insurance Company*

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limit of Circuit Rules 5-2, excluding the portions exempted by Rules 5(b)(1)(E) and 32(f) and 32-3.

The brief complies with the typeface and type-style requirements of Rule 32(a)(5)(A) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

Dated: April 24, 2023                     Respectfully submitted,

                                          /s/ Matthew Rozen
                                          Matthew Rozen

                                          *Counsel for Respondents*
                                          *United Behavioral Health and*
                                          *UnitedHealthcare Insurance Company*

## CIRCUIT RULE 25-5(e) ATTESTATION

Pursuant to Ninth Circuit Rule 25-5(e), I hereby attest that all other parties on

whose behalf this filing is submitted concur in the filing's content.


Dated:  April 24, 2023                    Respectfully submitted,


                                          /s/ Matthew Rozen
                                          Matthew Rozen

                                          *Counsel for Respondents*
                                          *United Behavioral Health and*
                                          *UnitedHealthcare Insurance Company*

# CERTIFICATE OF SERVICE

I certify that on April 24, 2023, I filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the appellate CM/ECF system, and caused a copy of the foregoing brief to be electronically served on counsel for Plaintiffs.

Dated:  April 24, 2023                    Respectfully submitted,


                                          /s/ Matthew Rozen
                                         Matthew Rozen

                                         *Counsel for Respondents*
                                         *United Behavioral Health and*
                                         *UnitedHealthcare Insurance Company*